UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRENDA COARSEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:13-cv-01454 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| ) | |
| REGIONS BANK CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Defendant Regions Bank Corporation ("Regions") has filed a Motion for Summary Judgment (Docket No. 31), to which the plaintiff, Brenda Coarsey, has filed a Response in opposition (Docket No. 37), and Regions has filed a Reply (Docket No. 39). For the reasons stated herein, Regions' motion will be granted and the plaintiff's Amended Complaint, which alleges a single count of age discrimination, will be dismissed with prejudice.

## BACKGROUND

### I. The Parties' Rule 56 Submissions

Regions has filed a Statement of Undisputed Material Facts (Docket No. 32) ("Defs. SUMF"), to which the plaintiff has filed a Response (Docket No. 38). Coarsey does not dispute any of the defendant's stated facts. To the extent Coarsey's responses purport to state additional facts (after conceding that each fact stated by the defendant is "undisputed"), the court has considered them in its analysis. At times, Coarsey's additional stated "facts" are not supported by the referenced citations.

The plaintiff has not filed a separate statement of disputed material facts under Local Rule 56.01(c), which provides that "the non-movant's response may contain a concise statement

of additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."

In support of its Rule 56 motion, Regions has filed (1) transcripts with selected exhibits for the depositions of Brenda Coarsey, Lisa Greene, Ed Stansberry, Allison Murphy Smith, Tanya Taylor, Marlene Akin, and Katherine Collins (Docket No 31, Exs. A, C, D, E, G, H, and I); and (2) affidavits from Stansberry, Joyce Wright, and Akin (*id.*, Exs. B, F, and J). In support of her opposition, Coarsey has filed duplicate copies of the deposition transcripts for Coarsey, Stansberry, Collins, Greene, Murphy Smith, Taylor, and Akin, and one document that was already in the record as an exhibit to the Coarsey deposition. (Docket No. 37, Exs. 1-8.)

## II. Facts

### A. Regions' Policies and Reported Breaches of Policy by Coarsey

The facts of this case are essentially undisputed. Coarsey worked as a teller at Regions' Inglewood Branch, where she reported to Head Teller Lisa Greene and where Ed Stansberry served as Branch Manager. During the course of her employment, Coarsey was also an account holder on multiple Regions accounts, including one she co-owned with her husband and one she co-owned with her son. Coarsey's relatives also maintained separate accounts at Regions on which Coarsey was *not* a signer. These included a joint account held by Coarsey's husband and their daughter, an account held by Coarsey's son and his wife, an account held by her grandson, and an account held by her grandson's mother. At the time, Coarsey (as did all Regions tellers) had the ability to view customer account information on her computer, including the customer's name, social security number, account number, and transactions associated with the account.

At the time of Coarsey's termination, Regions policy expressly prohibited tellers from processing or approving transactions relating to their own accounts, the accounts of immediate

2

family members or personal acquaintances, or accounts in which the employee may have a personal interest or be an authorized signer. Regions' Branch Banking Guidelines stated that (1) "Branch Associates should not complete paperwork and/or transfer[] funds from a customer's account (regardless of relationship) to their personal account without manager approval";[1] (2) tellers should "[k]eep customer information confidential: This includes the associate looking at someone's account for personal gain or curiosity . . . ." and (3) "Violations of these guidelines *could subject the employee to discipline up to and including termination*." (Emphasis added.) On January 5, 2012, just weeks before the circumstances leading to her termination, Coarsey acknowledged receipt of the Branch Banking Guidelines.

As a Regions employee, Coarsey also watched training videos about processing transactions and the types of personal and family transactions that were prohibited by Regions. These policies were also articulated in other written materials that Regions distributed or made available to Coarsey. (*See, e.g.*, Coarsey Dep., Ex. 4, Regions Code of Business Conduct (stating that "[y]ou are not allowed to process or approve transactions relating to your own personal accounts, the accounts of members of your immediate family or personal acquaintances, or accounts in which you have a personal interest or on which you are an authorized signer"); Ex. 10, Teller Manual ("CAUTION: Teller is prohibited from processing their own transactions or those of their immediate family or household. This includes processing deposits, withdrawals, or any other transactions to their own personal account."); Ex. 14 (stating that "[a]ssociates are not allowed to process or approve transactions relating to their own personal accounts, the accounts

---

[1] A teller wishing to make a deposit into an account that she owned or co-owned could initiate the transaction by completing the deposition slip, but the teller was required to hand off the completed deposit slip to another teller for processing.

of members of their immediate family members or personal acquaintances, or accounts in which the Associate may have a personal interest or is an authorized signer"). According to Coarsey's deposition testimony, the Inglewood Branch's Head Teller, Lisa Greene, was "lax" about enforcing company policies, including the policy forbidding tellers from looking at family members' accounts. (Coarsey Dep. at 63:19-64:3.)

Allison Murphy worked as a teller at the Inglewood Branch along with Coarsey. Murphy saw Coarsey looking at Coarsey's son's account on multiple occasions. After hearing Coarsey make a comment about the money in her grandson's mother's account, Murphy decided to report Coarsey's conduct. On January 23, 2012, during a break, Murphy told Head Teller Greene and Assistant Branch Manager Tanya Taylor that Coarsey had inappropriately viewed a customer account in violation of the company's policies.[2] Taylor reported Murphy's complaint to Branch Manager Stansberry. (*See* Taylor Dep. at 11:3-14:6 (stating that she could not "let the idea of someone breaching ethics go on without reporting it"). Upon receiving this report from Taylor, Stansberry called Area Human Resources Manager Marlene Akin to report the allegations about Coarsey.

On or about January 25, 2012, Murphy also called the Regions "Report It" hotline (an internal "1-800" reporting service for ethical violations) to report that Coarsey had been viewing the accounts of family members in violation of company policy. (*See* Collins Dep., Ex. 2, 1/25/12 Ethics and Compliance Report.) The company's internal record of that report indicates that the anonymous caller (who was actually Murphy) had reported that Coarsey "has been monitoring her grandson's, her daughter-in-law's, and her son's account, and she isn't an

---

[2] Murphy's last name later changed to Smith. For clarity, the court will refer to her only by her maiden name.

4

account holder for any of those accounts." (*Id.*) The internal report also indicated that "[t]he caller believes Coarsey is invading people's privacy, and he/she feels Coarsey is violating the above individuals' rights." (*Id.*)

On January 26, 2012, Stansberry met with Murphy. Murphy told Stansberry that she had seen Coarsey viewing family members' accounts and that Coarsey had been completing paperwork to transfer funds out of her family members' accounts. Stansberry e-mailed Akin about his discussion with Murphy, relaying Murphy's allegation that Coarsey recently had prepared multiple transactions for family members, that she had made transfers of money out of here relatives' accounts (on which Coarsey was not a signer), and that she was spending "a lot of time pulling up family members [sic] accounts and transferring money between them." (Collins Dep., Ex. 1.) So as not to raise suspicion while the allegations were being investigated, Stansberry told Akin that Murphy would be permitted to continue to process transactions for Coarsey.

**B. Regions' Investigation Into the Allegations of Misconduct**

Area Human Resources Manager Akin assigned Associate Relations Manager Katherine Collins to investigate the allegations against Coarsey.[3] Akin forwarded Stansberry's email summary to Collins, mentioning to Collins that Murphy had also reported the issue through the "Report It" line and stating that, "once we get the report, we'll get Brenda [Coarsey] in and require she give us the information to investigate . . . . I don't expect she will remain with the bank[.]" (*Id.* (ellipsis in original).) Akin testified that she made this last comment based on the fact that Coarsey's alleged actions were violations of bank policies, although she also testified

---

[3] Collins testified that the Associate Relations Manager at Regions essentially performed a human resources role. (*See* Collins Dep. at 5:15-6:2.)

that, at the time, she wanted to get additional information and had not decided at that point whether Coarsey should be terminated.

On February 27, 2012, Collins and Stansberry met with Coarsey concerning Murphy's allegations.[4] Coarsey admitted that she had looked at family member's accounts. Coarsey attempted to justify her conduct by claiming that "all the Tellers do it." (Coarsey Dep. at 146:8-16.; 14:15-149:5.) Collins asked Coarsey to identify the names of other tellers who had looked at family members' accounts, but Coarsey refused to identify those individuals by name or provide any additional information. Collins obtained information from Coarsey concerning her family members' accounts and placed Coarsey on administrative leave pending further investigation.

Collins requested that Regions' Information Technology ("IT") group investigate activity on the accounts of family members that Coarsey had identified during the February 27, 2012 meeting. The report generated from that request confirmed that Coarsey had viewed the accounts of her family members on numerous occasions, in violation of Regions' written policy.[5] Collins also asked the Senior Regional Operations Manager, Joyce Wright, to determine whether Coarsey had played a role in any transactions on accounts on which she did not have signing

---

[4] At some point during or soon after the January 26, 2012 reports of misconduct by Coarsey, Coarsey took approximately two-and-one-half weeks of leave for an unrelated family matter, during which time Regions suspended its investigation until she returned to work. Coarsey returned to work by February 27, 2012.

[5] IT generated a printout of the instances in which Coarsey had accessed her relatives' accounts (on which she was not a signer), showing the date and time of each instance of access to those accounts. (Collins Dep., Ex. 6.) The report reflects that Coarsey frequently accessed these accounts in the months preceding her termination. To take just one example, the report indicated that Coarsey had accessed her grandson's account, on which she was not a signer, thirty-five times over the previous three months. (*Id.* at PageID #373.)

authority. Wright examined transaction records for these accounts in the company's internal recording systems and reported the results of her research to Collins on February 28, 2012 (the next day). Through Wright's research and other information gathered by Regions, the investigation demonstrated that Coarsey had, in violation of company policy, completed paperwork to transfer money from her husband's and daughter's account (on which she was not a signor) into her own accounts by filling out a transfer debit form and a transfer credit form, which she then had passed to another teller to process. Regions' investigation showed that Coarsey had done this at least five times within the three months preceding her termination.[6]

Collins concluded that Coarsey had violated Regions' Branch Banking Guidelines by completing the paperwork to transfer funds from an account that Coarsey did not own into her personal account. Collins also determined that Coarsey had violated company policy by accessing family member's accounts multiple times in the previous several months, including accounts belonging to her son, husband, grandson, daughter-in-law, and grandson's mother. At the conclusion of the investigation, Akin and Collins decided that Coarsey's employment should be terminated. (*See, e.g.*, Collins Dep. at 29:4-9 ("[W]e had received the IT information back of [sic] Brenda [Coarsey] looking at the various family members' accounts multiple times within the last three months, as well as the transactions, which was the main thing, *where Brenda was benefitting from transactions she was a part of*. So that's where we made a decision in Brenda.") (emphasis added).) Stansberry agreed with this decision. On March 1, 2012, in accordance with Akin and Collins' decision, Regions terminated Coarsey.

---

[6] These transactions took place on December 27, 2011, January 23, 2012, January 25, 2012, January 26, 2012, and February 3, 2012. The details of these transactions are set forth in the record. (*See* Defs. SUMF, Fact Nos. 31-34; *see also* Docket No. 33 at p. 8.)

7

During the course of its investigation of the allegations against Coarsey, Regions determined that Greene had processed one of the transfers that Coarsey submitted from her husband's account. Shortly after terminating Coarsey, Collins met with Greene. Greene made comments during this meeting that made Collins suspect that Greene may also have processed transactions for Greene's own family members in violation of company policy. As with her treatment of the Coarsey investigation, Collins asked Greene for information about her family members' accounts and placed Greene on administrative leave pending further investigation. In contrast to the results of the Coarsey investigation, the investigation of Greene's conduct did *not* turn up any evidence that Greene had submitted transactions for family members or that she had viewed family members' accounts. Regions nevertheless issued Greene a written warning for exercising poor judgment when she processed one of the transfers from Coarsey's husband's account without first confirming with Coarsey's husband that he had given permission for the transaction.

It is undisputed that Murphy, who had processed certain transfers prepared by Coarsey in violation of Regions policy, was not disciplined by Regions because she had self-reported the violations to Regions.

After Regions terminated Coarsey, her full-time position was eliminated, and two "Prime Time" positions were created using the previous budget for Coarsey's teller position. The Prime Time positions are part-time teller positions scheduled to work during peak hours. One of the Prime Time Teller positions was filled by a woman born in 1971 (who would have been 41 years old on the date of Coarsey's termination) and the other was filled by a woman born in 1951 (who would have been approximately 60 years old on the date of Coarsey's termination). In other words, after Coarsey's position was eliminated, Regions hired two women for the new Prime

Time Teller positions, one about five years older than Coarsey and the other about 15 years younger.[7]

Coarsey has identified only two comments by co-employees that she believes concerned her age. In approximately November 2010 (over fifteen months before the circumstances leading to Coarsey's termination), Murphy asked Coarsey why she was still working and when she (Coarsey) might quit or retire. Coarsey did not report this comment to anyone. Coarsey also testified that, at an unspecified point, Greene "asked me one how long I was going to work. I should go ahead and retire." (Coarsey Dep. at 168:14-17.) Coarsey testified that she responded to Greene, whom Coarsey believed was about 50 years old at the time, that she and Greene would be the oldest people working at Regions. (*Id.* at 169:2-12.) Coarsey did not report Greene's comments to anyone.

On the date of her termination, Coarsey was 56 years old. Although Coarsey does not deny that her conduct violated the company's written policies, she claims in her Amended Complaint (Docket No. 23) that Regions actually terminated because of her age, in violation of the Age Discrimination in Employment Act ("ADEA").[8]

## **RULE 56 STANDARD**

---

[7] In Coarsey's Response to Fact 43 the Defendant's SUMF, Coarsey states "soon thereafter the 'Prime Time' position was eliminated. Ms. Coarsey's full-time teller position was re-instated and filled by the younger woman (born in 1971)." The referenced citation does not support counsel's statements in the response, nor has the court independently located any record support for either statement.

[8] Coarsey's original Complaint included a claim under the Family Medical Leave Act ("FMLA"). After the defendant moved to dismiss the FMLA claim, Coarsey received leave to file an Amended Complaint that omitted the FMLA claim.

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

### I. No Disputes of Fact

Coarsey does not dispute any of the defendants' stated material facts, and she has not submitted a separate statement of disputed material facts under Local Rule 56.01. Thus, the

question for the court is essentially whether, viewing the undisputed facts in the light most favorable to Coarsey, she can survive summary judgment.

## II. ADEA Standards

The ADEA makes it unlawful for an employer "to discharge . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a "motivating factor" in the adverse action; rather, the plaintiff must show that age was the "but for" cause of the challenged employer decision. *Scheick v. Tecumseh Public Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). For an employer to take an adverse action "because of" the employee's age means that age was the reason that the employer decided to act. *Scheick*, 766 F.3d at 529 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 3517, 2527 (2013)).

An employee may show discrimination through direct evidence or through circumstantial evidence. Direct evidence is evidence that, if believed, requires the conclusion that age was the "but for" cause of the employment decision. *Scheick*, 766 F.3d at 530. "[T]he inquiry includes both a predisposition to discriminate and that the employer acted on that predisposition." *Id.* "In other words: 'Direct evidence is evidence that proves the existence of a fact without requiring any inferences.'" *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Here, Coarsey does not contest that the record is devoid of direct evidence of age discrimination.

Where no direct evidence exists to support an ADEA discrimination claim, the *McDonnell Douglas* burden-shifting framework applies. *See Scheick*, 766 F.3d at 530 (citing

11

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010)).[9] To establish a *prima facie* case of age discrimination, a plaintiff must show: (1) she is a member of a protected age class (here, a person over the age of 40); (2) she suffered an adverse employment action (here, termination); (3) she was qualified for the position; and (4) either (a) she was replaced by a "significantly younger" employee, or (b) similarly situated non-protected employees were treated more favorably. *Grosjean*, 349 F.3d 332 (6th Cir. 2003); *Geiger v. Tower Auto.*, 579 F.3d at 623; *Douglas v. Eaton Corp.*, 577 F. App'x 520, 524 (6th Cir. 2014).[10] If the plaintiff meets this burden, the defendant must produce a legitimate, non-discriminatory reason for the adverse action. *Schoonmaker*, 595 F.3d at 264. If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the non-discriminatory reason

---

[9] The plaintiff suggests that there may still be ambiguity concerning the application of the *McDonnell Douglas* after *Gross*, an issue that *Gross* considered but did not address. Although the Supreme Court has not revisited the issue, the Sixth Circuit in *Scheick* stated that "this circuit and every other circuit have held [that] application of the *McDonnell Douglas* evidentiary framework to prove ADEA claims based on circumstantial evidence remains consistent with *Gross*." *Scheick*, 766 F.3d at 529; *see also Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811-812 (6th Cir. 2011) (applying *McDonnell Douglas* standard to ADEA discrimination claim premised on circumstantial evidence of discrimination).

[10] In two respects, the Sixth Circuit has been somewhat inconsistent in articulating the fourth element of the *prima facie* standard in age discrimination cases. First, the Sixth Circuit at times states that a discriminatory discharge case requires a showing that the employee was replaced by another individual "outside the protected class" (*i.e.*, under 40 years old). *Grosjean* clarified that, in age discrimination cases, "the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." 349 F.3d at 335. Second, in some cases, the Sixth Circuit states that the fourth element requires a showing that a similarly situated individual was treated more favorably – without any reference to replacement by a significantly younger individual. As the Sixth Circuit did in the unpublished *Douglas* case, and consistent with the manner in which the parties to this case have briefed the issues, the court has harmonized these standards in analyzing Coarsey's *prima facie* case.

offered is a pretext for discrimination because (1) it had no basis in fact, (2) it did not actually motivate the employer's decision, or (3) it was insufficient to justify the decision. *Id.* at 268; *Johnson v. Lockheed Martin Corp.*, -- F. App'x -- , 2015 WL 264498, at *4 (6th Cir. Jan. 22, 2015) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)).

### III. Application

#### A. *Prima Facie* Case

The parties dispute whether Coarsey has produced evidence supporting the fourth element of her *prima facie* case. To satisfy this element, Coarsey must show that either (a) she was replaced by a "significantly younger" employee, or (b) similarly situated non-protected employees were treated more favorably.[11]

With respect to the first approach, "it is not enough to show that 'another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Mayhue v. Cherry Street Servs., Inc.*, -- F. App'x -- , 2015 WL 349026, at *9 (6th Cir. Jan. 27, 2015). The undisputed facts show that, after Coarsey was terminated, her full-time position was eliminated and her job duties were absorbed by other tellers in the bank. (*See* Stansberry Aff. ¶ 4.) That fact alone precludes her from establishing that she was "replaced" for purposes of her *prima facie* case. Also, "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean*, 349 F.3d at 340. Even assuming *arguendo* that Coarsey's job was not

---

[11] Coarsey's brief primarily addresses only the second of these approaches, although the last paragraph of her brief (in the section relating to pretext) appears to relate to the first approach.

eliminated and that she was "replaced" by these two Prime Time tellers, one of those hires was *older* than she. The plaintiff's brief does not explain why the court should disregard that undisputed fact in its analysis, which contradicts her position that the age of her replacements provides circumstantial evidence of age discrimination. For either reason, this first approach to satisfying the fourth element of Coarsey's *prima facie* case fails.

As to the second approach, Coarsey has not provided sufficient evidence from which a jury reasonably could find that similarly situated younger employees were treated more favorably than she. For a comparator analysis to prevail, the plaintiff must show that the alleged comparators are similarly situated to the plaintiff in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 39 (6th Cir. 2009). While the relevant aspects may vary depending on the facts of the case and circumstances of a given case, in the disciplinary context courts may consider whether the individuals have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.* at 352.

Coarsey fails to identify what the "relevant" circumstances were, let alone explain why any other person should qualify as a comparator in the analysis of her *prima facie* case under the *Ercegovich* standard. Here, Coarsey engaged in flagrant and repeated violations of express Regions policies, Coarsey admitted to engaging in that misconduct, and Regions independently confirmed the allegations against Coarsey. Although Coarsey has identified five individuals whom she claims to have observed (or learned about second-hand) violating company policy concerning accessing family members' accounts and processing transactions, she fails to show

14

that any of these individuals engaged in conduct that was as serious and persistent as her misconduct, or that Regions was ever made aware of those employees' conduct. In fact Coarsey admits that she did not report these individuals at the time. Coarsey has failed to present evidence from which a jury could infer that Collins or Akin – the decision-makers in this case – were ever made aware of younger employees who engaged in the same policy violations but were not appropriately disciplined.[12] Coarsey also has failed to show, even now, why the five alleged comparators engaged in similarly situated conduct for which they should have been terminated.[13]

The only plausible comparator identified by Coarsey is Head Teller Greene, but the circumstances regarding the investigation and discipline of Greene merely reinforce why Greene is *not* an appropriate comparator. After independently suspecting that Greene (Coarsey's supervisor) may have looked at family members' accounts, Collins asked Greene for information about her family members and placed Greene on administrative leave pending the results of the investigation – just as she did with Coarsey after suspecting misconduct. However, unlike the investigation of Coarsey's conduct, the investigation of Greene did not turn up any evidence that Greene had submitted transactions on behalf of her family or that she had viewed family members' accounts. Regions chose to give a written warning to Greene for her role in approving a single transaction for Coarsey in violation of company policy regarding obtaining pre-approval (*i.e.*, a single infraction), but Regions chose not to terminate Greene because Regions'

---

[12] In other words, Regions could not have (discriminatorily) declined to discipline other tellers for infractions of which Regions was never made aware.

[13] For that matter, Coarsey has not demonstrated that these individuals are still Regions employees who could be disciplined now for conduct that Coarsey alleged occurred over three years ago.

investigation did not validate Collins' suspicion that Greene had been accessing her family members' accounts. Thus, Greene is not an appropriate comparator to Coarsey, whose circumstances were not similar to Greene's.

For these reasons, Coarsey cannot establish a *prima facie* case of age discrimination and, therefore, her claim must be dismissed.

### C. Pretext

Even assuming that Coarsey could establish a *prima facie* case, Coarsey has failed to create a genuine dispute of material fact that the legitimate non-discriminatory reason for her discharge was a pretext for age discrimination. Although Coarsey's brief states the three theories of pretext, she fails to state which theory or theories she believes should apply here, and she does not meaningfully discuss their application to the facts.[14]

The defendant terminated Coarsey for violating bank policies that barred tellers from completing paperwork to effectuate transfers on behalf of family members and that barred tellers from accessing the accounts of family members for personal gain or curiosity. Regions had warned all tellers that violating these policies could result in termination. Upon receiving a report of violations by Coarsey, Regions conducted a thorough investigation, interviewed Coarsey (who admitted to filling out paperwork for relatives and accessing their accounts), independently confirmed numerous instances in which Coarsey had violated the company's policies within the previous few months (as Murphy had reported), and terminated Coarsey after

---

[14] The court has advised Mr. Allman and his firm on at least four previous occasions that his failure to specify and apply any theory or theories of pretext is frustrating this court's efficient disposition of his clients' cases.

Akin and Collins recommended that she be terminated. There is no indication that Coarsey's age played any role whatsoever in Akin and Collins' decision-making process.

Although Coarsey testified that Murphy and Greene each made one comment to Coarsey that Coarsey believed related to her age, Murphy and Greene were co-employees who were not involved in the decision-making process leading to Coarsey's termination, and Coarsey did not make Akin and Collins (or anyone else at Regions) aware of these comments at any time. Finally, for essentially the same reasons that she cannot establish her *prima facie* case, there is no indication that Regions selectively disciplined Coarsey relative to younger employees.

## **CONCLUSION**

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted and the case will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge